632 A.2d 1302

**Thomas HEBDEN, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BETHENERGY MINES, INC.), Appellee.**

Supreme Court of Pennsylvania.

Argued March 10, 1993.

Decided Nov. 12, 1993.

Reargument Denied Jan. 11, 1994.

Blair V. Pawlowski, Pawlowski, Creany, Tulowitzki, Bilonick & Walter, Ebensburg, for appellant.

John J. Bagnato, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant, Thomas Hebden, a coal miner for over thirty years, was awarded workmen's compensation partial disability benefits for an occupationally acquired pulmonary lung disease (coal worker's pneumoconiosis) by order of a referee dated July 19, 1985. Effective as of August 25, 1983, Appellant was ordered to receive $227.40 per week as compensation. Neither Appellant nor his employer appealed this award. It thereby became a final determination not subject to future attack collaterally or by relitigation. On October 30, 1987, the employer (Bethenergy Mines, Inc.) filed a petition for modification—treated as a petition to terminate—alleging that Appellant's disability had changed and that he was no longer disabled from occupational pulmonary disease. The matter came before a new referee who conducted several hearings.

At a hearing on March 9, 1988, Dr. George W. Ketter testified on behalf of the employer. On August 3, 1988, Dr. Robert K. Klemens testified on behalf of Appellant.

When Dr. Ketter testified, he expressed the opinion that Appellant had neither pneumoconiosis nor any impairment as a result thereby. On cross-examination, Dr. Ketter admitted that *if* Appellant had no pneumoconiosis in 1988, then he would not have had it in 1983 either (R., 23a). The employer also offered the testimony of Dr. Robert G. Pickerill by way of deposition. Dr. Pickerill also contended that Appellant did not have pneumoconiosis, but stated the opinion that Appellant had a mild functional respiratory impairment due to chronic bronchial asthma, a non-occupational condition. This was, in effect, an opening of the original, unappealed determination that Appellant suffered from work-related pneumoconiosis and, thus, constituted impermissible relitigation.

Appellant was deemed by these two doctors to be fit to return to work at his last job as a shuttle car operator in the mines. The employer further offered medical evidence by way of a written report of Dr. Gregory Fino. Dr. Fino concluded that even if Appellant was disabled in 1983, he was not disabled currently (R., 142a). Dr. Fino also concluded that Appellant was suffering from non-occupational bronchial asthma and that he was fit to return to work.

Appellant's medical witness, Dr. Robert F. Klemens, testified to the contrary that he had examined Appellant in October, 1987, and that Appellant continued to suffer from pneumoconiosis, that he remained partially disabled and was unable to return to work. The only evidence in the record dealing with the reversibility of pneumoconiosis was offered by Dr. Klemens. He clearly testified that once a person has pneumoconiosis, he has it for the rest of his life and that once he has that disability, he cannot recover from it. Moreover, the disease is a progressive disorder and only tends to get worse with time (R., 30a–31).

The referee resolved the conflict in the medical evidence in favor of the employer, finding that Appellant's disability has

ceased to exist. She held that Appellant was neither partially nor totally disabled as a result of coal worker's pneumoconiosis nor any occupationally acquired lung disease. She adopted the opinion of the employer's doctors holding that Appellant suffered from a non-occupational disease, bronchial asthma. She ordered that Appellant's benefits should cease and terminate, and she specifically found that there was no *res judicata* issue in the case (R., 46a), because the prior award of benefits merely addressed Appellant's disability status at an earlier and different point in time. The Workmen's Compensation Appeal Board affirmed the holding that the employer had sustained its burden of proof on the medical issues. The Commonwealth Court, *en banc,* also affirmed in an opinion by Judge Robert L. Byer, 142 Pa.Cmwlth. 176, 597 A.2d 182. We granted Appellant's petition for review because we were alarmed by the decision's revisitation and reopening of a disability issue that had long been settled. If such issues can be retried at will, the statutory system of workmen's compensation would be seriously undermined. Our alarm was well founded, and for the reasons set forth below, we reverse.

 The Commonwealth Court's decision is centered on a lengthy and erudite discussion of the doctrine of *res judicata.* We acknowledge that the term "res judicata" is a somewhat sloppy term and that it is sometimes used to cover both *res judicata* itself (claim preclusion) as well as collateral estoppel ("broad" *res judicata* or issue preclusion). Collateral estoppel, broad *res judicata* or issue preclusion "forecloses relitigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989). It is admitted in the Commonwealth Court opinion itself that *res judicata* or issue preclusion prevents an employer from relitigating, by way of a petition to modify or terminate benefits, the original medical diagnosis underlying a referee's finding of a claimant's disability as of the date of the compensation award, 142 Pa.Cmwlth. at 197, 597 A.2d at 182. Yet, that is, in essence, what happened here. It is no mystery why

res judicata or issue preclusion applies to these situations. If it did not, disability victims could be continually harassed with petitions and hearings where they would be repeatedly forced to redemonstrate or redefend their claim of occupational disease and consequent disability. Such a system would be intolerable. We do not lose sight of the fact that the Workmen's Compensation Act at Section 413 (77 P.S. § 772) expressly provides that an award may be terminated based upon *changes* in the employee's disability. But that raises the logical question of whether an employee's disability is *changeable* in a given case. If it is, an employee's condition may be re-examined at a later time to see if he is still disabled or not. If it is not, an attempt to re-examine the employee's condition is merely a disguised attempt to relitigate what has already been settled. We think that the latter is what occurred here.

█ In the instant case, logically, the employer should first have addressed the issue of whether pneumoconiosis is reversible or not. On this record, the issue was first raised by Dr. Klemens' testimony for Appellant! He testified clearly that the disease is irreversible and progressive, that is, it only gets worse over time (R., 30a–31a).[1] This testimony, at a minimum, shifts the burden of production to the employer to present rebuttal evidence. Nowhere in this record or in the briefs filed with this Court does it do so. Indeed, Dr. Ketter's testimony for the employer, set forth above, reinforces Appellant's argument. Appellant's brief points out, moreover, that the U.S. Supreme Court has held that coal worker's pneumoconiosis is "irreversible in both its simple and complicated stages. No therapy has been developed." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 7, 96 S.Ct. 2882, 2889, 49 L.Ed.2d 752, 762 (1976). We find that the employer here did not meet its burden of producing evidence to rebut Appellant's contention that pneumoconiosis is not reversible.

1. The Commonwealth Court distinguishes *disease* from *disability*. Dr. Klemens' testimony clearly states that not only is the disease here irreversible, but it is also progressive, that is, the disability resulting from the disease can only get worse.

Unable to show the disease's reversibility, the employer here is precluded from trying to show that the disease has, in fact, been reversed in the case of Appellant. To allow the employer to do so would simply be allowing it to revisit the initial finding of Appellant's disability and, in a disguised way, to relitigate that issue. Sound principles of res judicata, collateral estoppel and issue preclusion bar such an attempt. Proof of a miracle cure must be left to theologians.

The order of the Commonwealth Court is reversed.

LARSEN, J., did not participate in the decision of this case.

CAPPY, J., joins the Majority Opinion and files a Concurring Opinion in which NIX, C.J., and FLAHERTY and MONTEMURO, JJ., join.

ZAPPALA, J., concurs in the result.

CAPPY, Justice, concurring.

I join the Majority Opinion. I would likewise reverse the judgment and order of the Commonwealth Court based upon the unrefuted and unrebutted testimony of Appellant's expert, Dr. Klemens, that pneumoconiosis is irreversible (R. 30a–31), which testimony was corroborated by employer's expert, Dr. Ketter (R. 23a). I agree that an opening of the original, unappealed determination that Appellant suffered from work-related pneumoconiosis constituted impermissible relitigation.

I write separately to point out that there may be circumstances where a once irreversible disease may, due to advances in medical science, become reversible and, in such event, an employer should have the right to establish that fact at a subsequent workmen's compensation termination hearing.

NIX, C.J., and FLAHERTY and MONTEMURO, JJ., join.